FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 21, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WILLIAM W.[1] | No: 4:21-cv-05101-LRS |
| Plaintiff, | |
| v. | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| KILOLO KIJAKAZI, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 21, 22. This matter was submitted for consideration without oral

---

[1] The court identifies a plaintiff in a social security case only by the first name and last initial in order to protect privacy. *See* LCivR 5.2(c).

ORDER - 1

argument.  Plaintiff is represented by attorney Chad Hatfield.  Defendant is represented by Special Assistant United States Attorney Michael J. Mullen.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, Plaintiff's Motion, ECF No. 21, is denied and Defendant's Motion, ECF No. 22, is granted.

## JURISDICTION

Plaintiff William W. (Plaintiff), filed for disability insurance benefits (DIB) on January 11, 2019, alleging an onset date of May 18, 2017.  Tr. 210-11.   Benefits were denied initially, Tr. 152-55, and upon reconsideration, Tr. 157-60.  Plaintiff appeared at a hearing before an administrative law judge (ALJ) on October 21, 2020. Tr. 74-95.  On October 29, 2020, the ALJ issued an unfavorable decision, Tr. 17-36. On May 3, 2021, the Appeals Council denied review.  Tr. 1-6.  The matter is now before this Court pursuant to 42 U.S.C. § 405(g).

## BACKGROUND

The facts of the case are set forth in the administrative hearings and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff previously applied for Title II benefits and a different ALJ denied the claim on May 17, 2017.  Tr. 96-121.  Plaintiff's date last insured is December 31, 2017.  Tr. 76.  The relevant period for this claim is May 18, 2017, to December 31, 2017.

ORDER - 2

Plaintiff testified that during the relevant period, he would get stiff and "lock up" overnight.  Tr. 85.  His elbows, spine, hip, pelvis, and knees were affected.  Tr. 85-86.  It would take two to three hours to loosen up every day.  Tr. 85.  He "wasn't getting around too well."  Tr. 86.  His back would shake and his legs would give out.  Tr. 86.  Two to three days per week he would need to lie down again during the day for twenty minutes up to two hours.   Tr. 86-87.  His feet would swell to the point he could not wear shoes and he would need to elevate them for about half the day.  Tr. 87-88.  If he looked at a computer, his neck and spine would hurt and it would radiate into his arms and hands after about five minutes.  Tr. 88-89.  He used a cane to walk.  Tr. 89.  He has psoriasis.  Tr. 90.  He had back surgery in March 2018.  Tr. 92.  Initially the pain was better, but then it got worse.  Tr. 92.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must

ORDER - 3

consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."  *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering

ORDER - 4

his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the

enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. § 404.1520(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).  If the claimant is not capable of

adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of May 18, 2017, through his date last insured of December 31, 2017.  Tr. 23.  At step two, the ALJ found that through the date last insured, Plaintiff had the following severe impairments: degenerative disc disease – cervical and lumbar spine; major depressive disorder; posttraumatic stress disorder; anxiety disorder NOS; and cannabis abuse/dependence.  Tr. 23.  At step three, the ALJ found that through the date last insured, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  Tr. 24.

The ALJ then found that, through the date last insured, Plaintiff had the residual functional capacity to perform light work with the following additional limitations:

ORDER - 7

He could stand and/or walk up to one hour at a time and four hours total in an eight-hour day; he would need to alternate between sitting and standing every 60 minutes; he could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs; he could never climb ladders, ropes, or scaffolds; he should avoid concentrated exposure to extreme cold and industrial vibrations, and all exposure to hazards; he could understand, remember, and carry out simple, routine, and repetitive tasks and instructions; he could maintain attention and concentration on simple, routine tasks for two-hour intervals between regularly scheduled breaks; he would require a predictable, structured environment with no changes in routine, judgment or decision-making, or a fast- or production-rate pace (i.e., assembly line-type work); he should also work away from the public and could tolerate only occasional and superficial (i.e., non-collaborative/no teamwork/no tandem tasks) interaction with co-workers; he should work with things rather than people; and he should work independently with only occasional supervision (i.e., no "over-the-shoulder" or constant supervision).

Tr. 26.

At step four, the ALJ found that through the date last insured, Plaintiff was unable to perform any past relevant work. Tr. 30. At step five, after considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found there were other jobs that exist in significant numbers in the national economy that Plaintiff could have performed such as small parts assembler, mail clerk, and collator operator. Tr. 31. Thus, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from May 18, 2017, the alleged onset date, through December 31, 2017, the date last insured. Tr. 31.

ORDER - 8

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying disability income benefits under Title II of the Social Security Act.  ECF No. 21. Plaintiff raises the following issues for review:

1.    Whether the ALJ properly applied the rebuttable presumption of continuing non-disability based on the previous non-disability decision;

2.    Whether the ALJ properly considered Plaintiff's severe impairments at step two;

3.    Whether the ALJ properly determined that Plaintiff does not meet or equal any Listing at step three;

4.    Whether the ALJ properly considered the medical opinion evidence;

5.    Whether the ALJ properly considered Plaintiff's symptom testimony; and

6.    Whether the ALJ made a properly supported step five finding.

ECF No. 21 at 5-6.

**DISCUSSION**

**A.    Presumption of Continuing Non-Disability**

"The principles of res judicata apply to administrative decisions, although the doctrine is applied less rigidly to administrative proceedings than to judicial proceedings."  *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1998) (citing *Lyle v. Sec'y of Health and Human Servs.*, 700 F.2d 566, 568 n.2 (9th Cir. 1983)).  Social

ORDER - 9

Security Acquiescence Ruling 97-4(9) followed *Chavez* and explains that it "applies only to cases involving a subsequent disability claim with an unadjudicated period arising under the same title of the [Social Security] Act as a prior claim on which there has been a final decision by an ALJ or the Appeals Council that the claimant is not disabled." Acquiescence Ruling (AR) 97-4(9), 1997 WL 742758. A previous final determination of nondisability creates a presumption of continuing nondisability with respect to any subsequent unadjudicated period of alleged disability. *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995); AR 97-4(9). "The claimant, in order to overcome the presumption of continuing nondisability arising from the first administrative law judge's findings of nondisability, must prove 'changed circumstances' indicating a greater disability." *Chavez*, 844 F.2d at 693 (citation omitted).

AR 97-4(9) directs adjudicators to follow a two-step inquiry in considering a prior nondisability decision. First, adjudicators must apply the presumption of continuing nondisability. *Id*. A claimant "may rebut this presumption by showing a 'changed circumstance' affecting the issue of disability with respect to the unadjudicated period;" for example, an increase in the severity of the claimant's impairments or the alleged existence of an impairment not previously considered. *Id*. Second, if the claimant rebuts the presumption, adjudicators must still give effect to certain findings in the final Appeals Council or ALJ decision on the prior claim while adjudicating the subsequent claim, including findings regarding a claimant's

severe impairments, whether the claimant's impairments meet or equal a Listing,

RFC, education, or work experience. *Id.* Such findings must be adopted in

determining whether the claimant is disabled for the unadjudicated period "unless

there is new and material evidence relating to such a finding or there has been a

change in the law, regulations or rulings affecting the finding or the method for

arriving at the finding." *Id.*

The ALJ found that Plaintiff "alleges worsening of his impairments during the

unadjudicated period, thereby rebutting the presumption of continuing non-

disability." Tr. 21. However, the ALJ found "no evidence of deterioration in the

claimant's overall functioning since the prior decision of May 17, 2017, and I

therefore adopt the findings of that decision regarding the claimant's severe

impairments, residual functional capacity, ability to perform past relevant work, and

ability to perform other work." Tr. 21; *see* Tr. 26.

Plaintiff asserts the ALJ "found that the claimant did not rebut the *Chavez*

presumption of continuing non-disability," ECF No. 21 at 2, and argues the ALJ

erred by "inexplicably invoking the Chavez [sic] presumption," ECF No. 21 at 7.

To the contrary, the ALJ found that Plaintiff rebutted the presumption of continuing

non-disability by alleging worsening of his impairments. Tr. 21. Once the ALJ

determined that Plaintiff's allegations were a rebuttal of the presumption, the ALJ

was required adopt the findings of the prior decision unless the record showed new

and material evidence related to those findings, or if there had been a change in the

law, regulations or rulings affecting the findings. Tr. 21; *see* AR 97-4(9). The ALJ

properly considered the presumption of continuing non-disability, found it was

rebutted by Plaintiff's allegations of worsening condition, and looked to the record

to determine whether there was new and material evidence of deterioration in

Plaintiff's condition since the May 17, 2017, decision. The ALJ did not err in

considering the *Chavez* presumption.

**B.    Step Two**

At step two of the sequential process, the ALJ must determine whether there is

a medically determinable impairment established by objective medical evidence

from an acceptable medical source. 20 C.F.R. § 404.1521. A statement of

symptoms, a diagnosis, or a medical opinion does not establish the existence of an

impairment. *Id.* After a medically determinable impairment is established, the ALJ

must determine whether the impairment is "severe;" i.e., one that significantly limits

his or her physical or mental ability to do basic work activities. 20 C.F.R. §

404.1520(c). However, the fact that a medically determinable condition exists does

not automatically mean the symptoms are "severe" or "disabling" as defined by the

Social Security regulations. *See e.g., Edlund*, 253 F.3d at 1159-60; *Fair v. Bowen*,

885 F.2d 597, 603 (1989); *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985).

Plaintiff argues generally that the ALJ "inexplicably" concluded that

Plaintiff's congenital hip deformity/arthritis (with shortened left leg), lumbar

radiculopathy, neurogenic claudication, chronic venous insufficiency, and ankylosing spondylosis are not severe impairments at step two.  ECF No. 21 at 17.

First, the ALJ explained his findings regarding Plaintiff's leg length discrepancy and congenital hip dysplasia.  Tr. 23.  The ALJ observed that the previous ALJ decision noted references to those conditions, but neither condition caused more than a minimal limitation in the ability to perform basic work-related activities.  Tr. 23, 101-02.  The ALJ also found nothing in the current record indicates a change or increase in severity in either condition such that either is established as a severe impairment.  Tr. 23.  Plaintiff does not acknowledge the ALJ's finding or cite any evidence from the relevant period indicating either condition increased in severity or is a severe impairment.   ECF No. 21 at 17.

Second, the ALJ explained his findings regarding ankylosing spondylitis.  Tr. 23-24.  The ALJ noted that the previous ALJ made findings regarding the diagnoses of ankylosing spondylitis in the record.  Tr. 23, 103.  Dr. Lynne Jahnke, the medical expert who testified at the previous hearing in 2017, testified that the diagnoses of ankylosing spondylitis were incorrect.  Tr. 23-24.  The ALJ noted that Caner Sakin, M.D., a rheumatologist, examined Plaintiff in August 2014, and that an HLA-B27 blood test was negative and lumbar x-rays showed only a levoconvex curvature with mild degenerative changes.  Tr. 24, 103.  Dr. Jahnke testified that a blood test for the HLA-B27 antigen would be positive 99 percent of the time when there is ankylosing spondylitis.  Tr. 24, 45, 103.  Dr. Jahnke also testified that a typical finding of

ankylosing spondylitis is x-ray evidence of "bamboo" spine, and that there was no such evidence in Plaintiff's x-rays.  Tr. 24, 45, 103.  Nonetheless, Dr. Sakin diagnosed Plaintiff with ankylosing spondylitis, although he mentioned the etiology of his symptoms was unclear, and the ALJ noted that Plaintiff repeated this diagnosis to other providers.  Tr. 24, 103.  Accordingly, other providers repeated the diagnosis by history.  Tr. 24, 103.  Thus, the previous ALJ found that ankylosing spondylitis was not a medically determinable impairment.  Tr. 103.

As noted *supra*, the ALJ in the current decision was required to adopt the step two findings of the previous ALJ unless there was new and material evidence related to those findings.  *See* AR 97-4(9).  The ALJ noted that the diagnosis of ankylosing spondylitis appears in the record for the relevant period, but that Plaintiff did not undergo any new testing during the relevant period which substantiates ankylosing spondylitis as a medically determinable impairment.[2]  Tr. 24.  In fact, the ALJ noted that after the date last insured, Plaintiff's HLA-B27 result was negative in April and May 2018 and a rheumatology consult listed ankylosing spondylitis only as a differential diagnosis.  Tr. 24, 422, 552.

---

[2] As noted *supra,* a diagnosis alone is insufficient to establish the existence of an impairment.  20 C.F.R. § 404.1521.  There must be objective medical evidence from an acceptable medical source to establish a medically determinable and severe impairment.  *Id.*

ORDER - 14

Plaintiff does not acknowledge or address the ALJ's reasons for concluding ankylosing spondylitis is not a severe impairment. ECF No. 21 at 17. Plaintiff argues generally that the ALJ failed to properly evaluate the medical record, ECF No. 21 at 17, which is insufficient to establish that the ALJ erred in fact or law regarding the ankylosing spondylitis findings.

Third, even if lumbar radiculopathy, neurogenic claudication, and chronic venous insufficiency could have been determined to be severe impairments, Plaintiff has not identified any evidence showing they are severe impairments, nor has Plaintiff identified any harm from not including them as severe impairments. Indeed, the ALJ discussed the relevant findings throughout the decision. If an ALJ misses a severe impairment at step two, reversal may not be required if the step is resolved in the claimant's favor. *See Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017); *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). Here, the ALJ continued consideration of whether there was new and material evidence of deterioration in Plaintiff's condition and considered all of the impairments mentioned by Plaintiff throughout the decision. There is no error at step two.

## C.    Step Three

At step three of the evaluation process, the ALJ must determine whether a claimant has an impairment or combination of impairments that meets or equals an impairment contained in the listings. *See* 20 C.F.R. § 404.1520(d). The listings

describe "each of the major body systems impairments [considered] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525. An impairment "meets" a listing if it meets all of the specified medical criteria. *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990); *Tackett,* 180 F.3d at 1098. An impairment that manifests only some of the criteria, no matter how severely, does not qualify. *Sullivan,* 493 U.S. at 530; *Tackett,* 180 F.3d at 1099. An unlisted impairment or combination of impairments "equals" a listed impairment if medical findings equal in severity to all of the criteria for the one most similar listed impairment are present. *Sullivan,* 493 U.S. at 531; *see* 20 C.F.R. § 404.1526(b).

As an initial matter, Plaintiff argues the ALJ's step three finding is "boilerplate" and therefore insufficient. ECF No. 21 at 17-18. However, there is no reading of the ALJ's step three finding that is "boilerplate." Tr. 24-26. The ALJ adopted the step three finding from the prior ALJ decision, which, as discussed *supra*, the ALJ was required to do unless there was new and material evidence relevant to the finding. The ALJ specifically discussed the findings leading to the conclusion that no evidence from the relevant period shows findings necessary to meet the criteria of Listing 1.04. Plaintiff bears the burden of establishing he meets a listing, *Burch*, 400 F.3d at 683, but Plaintiff does not show how he meets the medical criteria for each part of the listing. ECF No. 21 at 17-18.

In order to equal Listing 1.04, there must be a spine disorder that results in the compromise of a nerve root or the spinal cord with one of the following:  (A) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss, and a positive straight-leg raising test if the lower back is involved; (B) spinal arachnoiditis; or (C) lumbar spinal stenosis resulting in the inability to ambulate effectively.  20 C.F.R. Pt. 404, Subpt. P, App.1, 1.04.  The ALJ observed that regarding (A) and (B) the previous ALJ found the lumbar MRI from January 2017 showed no findings of nerve root compression or spinal arachnoiditis.  Tr. 24.  With regard to (C), the previous ALJ found that although imaging showed moderate to severe central canal stenosis at L4-L5, Plaintiff did not require an assistive device for ambulation that interferes with the functioning of both upper extremities.  Tr. 24, 103-04.  Dr. Jahnke, the medical expert, testified that Plaintiff's spine impairments did not meet or medically equal a listing.  Tr. 24.

The ALJ then considered the medical evidence from the relevant period for the current application.  Tr. 24.  The ALJ noted there was no further lumbar imaging until a May 2018 x-ray which showed a minimal apex curvature in the lower lumbar and no acute fracture.  Tr. 24, 903-04.  In other words, there was no evidence of change to the finding that there is no nerve root compression or spinal arachnoiditis in the record.

Plaintiff argues the ALJ incorrectly found that Plaintiff was able to ambulate effectively during the relevant period.  ECF No. 21 at 19 (citing Tr. 30).  Plaintiff asserts he "routinely" presented with gait limitations but cites only one record.  ECF No. 21 at 19.  "Ineffective ambulation" is defined in the Listings: "Ineffective ambulation is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities."  20 C.F.R. Pt. 404, Subpt. P, App.1, 1.00B2b1.  The ALJ found that Plaintiff did not require as an assistive device for ambulation that interfered with the functioning of both upper extremities, *see* Tr. 24, and Plaintiff has identified no evidence to the contrary.

Plaintiff does not argue that he in fact meets the criteria for any Listing, only that his impairments and limitations equal Listings 1.04 and 14.09 in combination.  ECF No. 21 at 18.  Plaintiff's entire argument that he meets the listing is as follows: "The record includes evidence supporting marked limitation in motor skills, with testing showing significantly limited bilateral grip strength, significantly below average fine motor skills test scores with the left hand during the PCE Board-Round Block test, and significantly below average fine motor skills test scores with the bilateral hands during the Purdue Pegboard test."  ECF No. 21 at 18.  Plaintiff identifies no basis for the assertion that these findings translate to a "marked" limitation in any functional area as there is no opinion or assessment to

ORDER - 18

that effect in the record.  Furthermore, a generalized assertion of functional problems is not enough to establish disability at step three.  *Tackett*, 180 F.3d at 1100.

Plaintiff refers to counsel's discussion about equivalence with the ALJ at the hearing by citation (but not explanation).  ECF No. 21 at 18 (citing Tr. 80-81).  At the hearing, Plaintiff's counsel suggested that Listing 14.09 for inflammatory arthritis applied due to the diagnosis of ankylosing spondylitis, but the ALJ stated that the previous ALJ had not found ankylosing spondylitis as a severe impairment. Tr. 80-81.  A finding of equivalence must be based on medical evidence only.  20 C.F.R. § 404.1529(d)(3).  The ALJ asked for objective findings that establish it as an impairment and none was provided at that time or in briefing, as discussed *supra*.  Tr. 80-81.  Plaintiff now cites some findings regarding Plaintiff's motor skills and grip strength without specifying how these issues relate to Listings 1.04 and 14.09 or how they demonstrate equivalency.  Nothing in the regulations says a claimant may circumvent the requirements of the listing by equaling rather than meeting the listing.  *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2011).

Finally, the ALJ observed that no medical source opined that Plaintiff's impairment was medically equivalent in severity to Listing 1.04.  Tr.  24.  The ALJ appropriately adopted the previous ALJ's step three findings, discussed evidence from the relevant period, and the conclusions that Plaintiff does not meet or equal a listed impairment is supported by substantial evidence.

ORDER - 19

**D.     Medical Opinion Evidence**

For claims filed on or after March 27, 2017, new regulations changed the framework for evaluation of medical opinion evidence.  *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.[3]  The regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…"  *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 404.1520c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources.  20 C.F.R. § 404.1520c(a) and (b).  Supportability and consistency are the most important factors in evaluating the persuasiveness of medical opinions and prior administrative findings, and therefore the ALJ is required to explain how both factors were considered.  20 C.F.R. § 404.1520c(b)(2).  The ALJ may, but is not required, to explain how other factors were considered.  20 C.F.R. § 404.1520c(b)(2); *see* 20 C.F.R. § 404.1520c(c)(1)-(5).

*1.  Reuben Grothaus, D.O.*

---

[3] Plaintiff argues the "specific and legitimate" standard continues to apply despite the new regulations.  ECF No. 23 at 12.  The Ninth Circuit has concluded that the new regulations displace the "irreconcilable" and "incompatible" specific and legitimate reasons standard.  *Woods v. Kijakazi*, 32 F.4th 785, 790-92 (9th Cir. 2022).

In December 2017, Dr. Grothaus completed a "WorkFirst Documentation Request Form for Medical or Disability Condition."  Tr. 315-17.  He listed diagnoses of ankylosing spondylosis – spinal degenerative disease; central stenosis L4-L5 – nerve compression; congenital hip disease on left – pain in hip; and lumbosacral radiculitis – bilateral lower extremities from lumbar stenosis.  Tr. 315. Dr. Grothaus assessed the following limitations:

> Gait, slow, limp, forward flexed trunk posture
> Limited lumbar flexion, limited cervical rotation, limited lateral flexion
> Significantly impaired shoulder flexion/extension on left.  Limited [right] wrist flexion
> Significantly limited hip motion.  Limited muscular endurance
> Limit sitting to 30 minutes at a time
> Significantly limited fine motor function
> Cannot lift > 15 lbs

Tr. 315.  He opined that Plaintiff could work zero hours per week, but also that he was limited to performing sedentary work.  Tr. 315-16.

The ALJ found Dr. Grothaus's opinion about Plaintiff's limitations unpersuasive.  First, as to supportability, the more relevant the objective medical evidence and supporting explanations provided by a medical source to support his or her opinion, the more persuasive the medical opinion will be.  20 C.F.R. § 404.1520c(c)(1)-(2).  The ALJ noted that while Dr. Grothaus said that Plaintiff was significantly limited in fine motor function, he did not elaborate or assess any specific restrictions.  Tr. 28.  An ALJ may reject an opinion that does "not show how [the claimant's] symptoms translate into specific functional deficits which preclude

ORDER - 21

work activity." *Morgan v. Comm'r Soc. Sec. Admin.,* 169 F.3d 595, 601 (9th Cir. 1999). The ALJ observed that Dr. Grothaus included ankylosing spondylitis as an impairment and indicated it was supported by testing and lab reports, but noted the objective evidence does not support the diagnosis, as discussed *supra*. Tr. 28. Dr. Grothaus also indicated that Plaintiff had nerve compression in his lumbar spine, but the ALJ noted that a 2014 MRI only states that a disc protrusion "could be mildly impinging" on the L5 nerve roots. Tr. 28. The ALJ concluded there is no objective evidence of nerve root compression, and that there is no new and material evidence from the relevant period showing nerve root compression. Tr. 28.

Plaintiff argues the 2014 MRI was nearly four years old by December 2017 and cites findings from a January 2017 MRI to suggest that Dr. Grothaus' opinion was supported. ECF No. 21 at 12 (citing Tr. 487). However, as the ALJ noted, this MRI was considered by the previous ALJ in the prior decision, and it was noted that it documented no findings of nerve root compression or spinal arachnoiditis. Tr. 24, 103-04. There was no additional lumbar imaging until May 2018, when an x-ray showed a minimal apex curvature in the lower lumbar and no acute fracture. Tr. 903. The ALJ's findings are supported by substantial evidence.

As to consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion will be. 20 C.F.R. § 404.1520c(c)(1)-(2). The ALJ observed that Dr. Grothaus listed some findings that purportedly supported the

assessed limitations, but his own treatment notes do not show such findings and are inconsistent with the limitations assessed. Tr. 28. Dr. Grothaus indicated that Plaintiff had slow gait, limp, and forward-flexed trunk posture and limited range of motion, but his exam records do not reflect such findings. Tr. 28, 324, 338. Plaintiff cites Dr. Grothaus' exam record from November 7, 2017, but this record indicates normal range of motion in the neck and musculoskeletal system. ECF No. 21 at 11 (citing Tr. 324). Dr. Grothaus found tenderness in the lumbar back, but none of the other findings in his assessment of limitations were findings on exam. Tr. 315, 324. On December 7, 2017, the same day Dr. Grothaus completed the WorkFirst form, objective findings were normal in all categories, including normal range of motion in the neck and musculoskeletal system. Tr. 317, 338. It was reasonable for the ALJ to conclude that Dr. Grothaus' own findings are inconsistent with the limitations assessed.

The ALJ also noted that while Dr. Grothaus said Plaintiff would not be able to look for work, prepare for work, or actually work, he also opined that Plaintiff had limitations consistent with sedentary work. Tr. 28, 315-16. The ALJ found this inconsistency makes Dr. Grothaus' opinion less persuasive. Tr. 28. Plaintiff argues that Dr. Grothaus' assessment that Plaintiff was limited to sedentary work "says nothing of the claimant's ability to maintain in regular, continuous employment." ECF No. 21 at 12. However, the definition of "Sedentary work" on the form mentions "a sedentary job" and references frequent lifting or carrying, defined as

"able to perform the function for 2.5 to 6 hours in an 8-hour day." Tr. 316.

Regardless, the ALJ's interpretation of the opinion was reasonable and based on

substantial evidence.

Additionally, the ALJ noted that Dr. Grothaus "essentially stated that the

claimant could not work," which is an issue reserved to the Commission and his

opinion in that regard is "neither valuable nor persuasive." *See* 20 C.F.R. §

404.1520b(c). To the extent the opinion is a statement that Plaintiff cannot work, it

was reasonable for the ALJ to find it unpersuasive.

### 2. Mark Johnson, PT

In September 2017, Mr. Johnson completed a "WorkWell Functional Capacity

Evaluation." Tr. 497-502. Mr. Johnson found Plaintiff is able to ambulate

frequently though with a slow cadence and gait patter deviation; has a good

tolerance for prolonged seated work tasks; is able to lift/carry 12.5-15 pounds; has a

good tolerance for prolonged standing work tasks; and has other work-related

abilities. Tr. 498. Mr. Johnson also listed limitations such as gait impairments, slow

cadence, Trendelenburg pattern, and forward flexed trunk; significant or slight

limitations in rotation, flexion, extension, and ROM in various aspects of the

cervical and lumbar back, shoulder, wrist, hip, and ankle, with limited B grip

strength and slightly or significantly below average fine motor skills in certain areas.

Tr. 498.

ORDER - 24

The ALJ noted that Mr. Johnson's 2017 report did not give a clear opinion concerning specific functional limitations.  Tr. 27.  The ALJ inferred that Mr. Johnson's findings were that Plaintiff could stand and walk frequently, could lift and carry 12.5 to 15 pounds, and had good tolerance for other work-related activities.  Tr. 27.  To the extent Mr. Johnson's 2017 report is specific enough to constitute a medical opinion, the ALJ found it largely persuasive.  Tr. 27.  The ALJ acknowledged the opinion was based on a thorough evaluation that measured work-related abilities.  Tr. 27.  However, the ALJ found the lifting and carrying limitation was not persuasive because it was based on a one-time evaluation conducted during a period in which Plaintiff's abilities were temporarily diminished by worsening neurogenic claudication.  Tr. 27.  The ALJ also found the lifting and carrying limitation was too low in comparison to the longitudinal record, and concluded this does not constitute new and material evidence warranting a deviation from the prior ALJ decision.  Tr. 27.

Plaintiff first argues the ALJ's assessment of Mr. Johnson's opinion "is internally inconsistent and cannot be supported by substantial evidence."  ECF No. 21 at 15.  Plaintiff does identify or explain any inconsistency in the ALJ's consideration of Mr. Johnson's opinion, and the Court finds none.

Second, Plaintiff argues the ALJ failed to explain how Plaintiff's worsening neurogenic claudication was temporary.  ECF No. 21 at 15.  However, the ALJ explained that Plaintiff developed worsening neurogenic claudication toward the end

of the relevant period, but it was corrected with surgery a few months after the date last insured.  Tr. 30.  In December 2017, Dr. Wahl noted progressive neurogenic claudication with pain in the bilateral hips and ambulating; he had significant improvement when sitting.  He noted the January 2017 MRI showed moderate to severe central stenosis L4-5.  Tr. 119.  Plaintiff walked with a cane; had hypoesthesia over the L4-L5 distribution; walked with a forward bias gait and had no profound motor sensory deficits otherwise.  Tr. 119.  After surgery in March 2018, Plaintiff reported significant improvement of his symptoms since the surgical procedure; however, he was reporting a slight increase to his pain symptoms after his vehicle hit a deer.  Tr. 403-04.  Plaintiff's lumbar exam revealed mild limitation to range of motion consistent with recent surgery; slightly antalgic gait, no assistive device to ambulate, and negative sitting straight leg bilaterally.  Tr. 407.  In July 2018, lumbar exam findings were essentially the same.  Tr. 398.  The ALJ's finding is supported by substantial evidence.

In December 2019, Mr. Johnson conducted a second physical capacity evaluation.  Tr. 1058-60.  He indicated that Plaintiff had good tolerance for prolonged, seated work tasks; was able to lift/carry 10 to 12.5 pounds; good tolerance for prolonged, standing work tasks, and good tolerance for other work-related tasks.  Tr. 1059.  He limitations similar to those assessed in 2017.  Tr. 1060. The ALJ again found Mr. Johnson's opinion to be largely consistent with the previous ALJ's conclusions although Mr. Johnson included a greater lifting

restriction.  Tr. 29.  As with the 2017 opinion, the ALJ found this difference does not

constitute new and material evidence warranting a deviation from the previous

ALJ's findings.  Tr. 29.  Plaintiff does not challenge the ALJ's assessment of Mr.

Johnson's December 2019 opinion, ECF No. 21 at 14-15, and the Court finds it is

supported by substantial evidence.

### 3.  Timothy Salvos, PAC

In October 2018, Mr. Salvos completed a "WorkFirst Documentation Request

Form for Medical or Disability Condition."  Tr. 701-03.  He listed a diagnosis of

ankylosing spondylitis and assessed a limited ability to bend forward, extend, and

lift heavy objects.  Tr. 701.  He indicated that Plaintiff would have increased pain

with standing on cement surfaces and opined that Plaintiff was unable to participate

in work, look for work, or prepare for work.  Tr. 701.  He also opined that Plaintiff

was limited to light work.  Tr. 702.

The ALJ found Mr. Salvos' opinion unpersuasive for the same reasons that

Dr. Grothaus' December 2017 opinion; namely, because Mr. Salvos relied on a

diagnosis of ankylosing spondylitis which is not supported by objective findings.

Tr. 29; *see supra*.  The ALJ also found that Mr. Salvos' opinion was given well after

the relevant period, Tr. 29, and there is no indication that the opinion relates back to

the relevant period.  "[I]t is well-established that an ALJ may reject a medical

opinion, even that of a treating doctor, where it was completed ... years after

claimant' date last insured and was not offered as retrospective analysis." *Morgan v.*

*Colvin*, No. 6:12-CV-1235-AA, 2013 WL 6074119, at \*10 (D. Or. Nov. 13, 2013) (citations and internal quotations omitted).  The ALJ's finding is supported by substantial evidence.

### 4.  Si Feng, DNP

Plaintiff argues the ALJ erred by failing to address Mr. Feng's assessment. Plaintiff cites records from Mr. Feng from July 2017 and January 2018 indicating "treatment strategies" of: (1) participate in daily exercise regimen with aerobic activity involving the lower extremities; (2) avoid sitting for prolonged period of time (i.e., no continuous sitting more than 2 hours) avoid crossing legs; (3) maintain adequate fluid or water intake; (4) elevate legs whenever possible; (5) wear knee high compression stockings.  Tr. 506, 960, 1023 (duplicate).

The ALJ did not assign weight to any of Mr. Feng's statements, nor was he required to.  Under the regulations effective for claims filed after March 2017, an ALJ need only consider medical opinions.  20 C.F.R. § 404.1520c.  A medical opinion is a statement from a medical source about what a claimant can still do despite his or her impairments and whether the claimant has impairment-related limitations or restrictions in the ability to perform the physical, mental, environmental, or other demands of work activities.  20 C.F.R. § 404.1513.  Plaintiff argues the ALJ erred by "failing to address this disabling prescribed treatment." ECF No. 21 at 17; *see* ECF No. 21 at 20.  Even if the "treatment strategies" noted by Mr. Seng rise to the level of "prescribed treatment," Mr. Seng's notes to that effect

do not meet the definition of a medical opinion under the regulations.  Furthermore, a recommendation or suggestion that a patient "elevate legs whenever possible" is not the same as a functional limitation.  *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 691–92 (9th Cir. 2009) (upholding the ALJ's rejection of an equivocal medical observation because it was "neither a diagnosis nor a statement of [the plaintiff's] functional capacity" and finding that it was "rather a recommended way for [the plaintiff] to cope with his PTSD symptoms").  Plaintiff's argument that the need to elevate his legs is a functional limitation is not supported by the record.  The ALJ did not err in by not specifically evaluating Mr. Sing's treatment notes as a medical opinion.

**E.    Symptom Testimony**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834; *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

The ALJ adopted the RFC finding of the previous ALJ. Tr. 26. A credibility finding is a subordinate finding to a previous RFC finding. *See* SSAR 97-4(9), 1997

WL 742758 (December 3, 1997); HALLEX I-5-4-60, 1998 WL 34083439, at *6 (December 28, 1998).  Thus, the ALJ was not required to revisit the reliability of Plaintiff's symptom claims.

Regardless, the ALJ listed several contradictions between Plaintiff's statements and the medical record and as discussed throughout this decision, found that the evidence from the relevant period did not support Plaintiff's allegations of a decline in functional capacity.  Tr. 27.  Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.  *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir.1995).  Plaintiff does not directly address the ALJ's findings and repeats arguments discussed *supra*.  ECF No. 21 at 18-22; ECF No. 23 at 10-11.  The ALJ's findings regarding Plaintiff's symptom testimony are supported by substantial evidence and are legally sufficient.

## F.    Step Five

Plaintiff argues the ALJ erred by not calling a vocational expert at the hearing. ECF No. 21 at 20.  The case cited by Plaintiff, *Hoopai v. Astrue*, is not on point. 499 F.3d 1071, 1076 (9th Cir. 2007).  In *Hoopai*, the court found that the ALJ properly relied on the grids in determining that there were jobs available in the national economy, and that the plaintiff was not improperly denied the opportunity to cross-examine a vocational expert or question the ALJ about alternative jobs available in the national economy.  *Id.*  In this case, the ALJ did not rely on the

grids.  Pursuant to the regulations and AR 97-4(9), the ALJ properly adopted the

RFC and step five finding of the previous ALJ.  As such, there was no reason to call

a vocational expert at the hearing because there was no change to the findings.

Plaintiff also contends the ALJ erred at step five because the finding that there

are jobs available that Plaintiff can perform was based on an incomplete

hypothetical.  ECF No. 21 at 20-21.   The ALJ's hypothetical must be based on

medical assumptions supported by substantial evidence in the record which reflect

all of a claimant's limitations.  *Osenbrook v. Apfel*, 240 F.3D 1157, 1165 (9th Cir.

2001).  The hypothetical should be "accurate, detailed, and supported by the medical

record."  *Tackett*, 180 F.3d at 1101.  The ALJ is not bound to accept as trued the

restrictions presented in a hypothetical question propounded by a claimant's counsel.

*Osenbrook*, 240 F.3d at 1164; *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir.

1989); *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986).  The ALJ is free to

accept or reject these restrictions as long as they are supported by substantial

evidence, even when there is conflicting medical evidence.  *Magallanes*, 881 F.2d at

*id.*

Plaintiff argues that "improperly rejected limitations – specifically, off task

10% or more of the time, or absent more than one day per month" preclude

competitive employment.  ECF No. 21 at 21 (citing Tr. 71-72).  Plaintiff has not

argued, discussed, or established any error with regard to limitations of being off

task or absenteeism.  The ALJ's finding that there is no new and material evidence

regarding the relevant period that warrants a departure from the residual functional capacity in the previous ALJ's decision is based on substantial evidence.  Tr. 26. Therefore, the ALJ properly adopted the step five finding from the prior ALJ's decision.  Tr. 31.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly,

1.  Plaintiff's Motion for Summary Judgment, **ECF No. 21**, is **DENIED**.

2.  Defendant's Motion for Summary Judgment, **ECF No. 22**, is **GRANTED**.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.  Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** September 21, 2023.

_____
LONNY R. SUKO
Senior United States District Judge